IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYNN WHITMEYER, <br><br> Plaintiff, <br> v. <br><br> R & O CONSTRUCTION, INC., DALE CAMPBELL an individual, MIKE HOLLAND, an individual, <br><br> Defendants. | **MEMORANDUM DECISION and ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 1:11-cv-125-DN <br><br> District Judge David Nuffer |

Defendants R & O Construction Inc. (R & O), Dale Campbell and Mike Holland filed a Motion for Partial Summary Judgment on Plaintiff Whitmeyer's (1) Title VII claims against the individual defendants; (2) Title VII claims arising from acts occurring prior to December 22, 2009 as time barred; and (3) state law tort claims against R & O.[1] After having carefully reviewed the pleadings and memoranda submitted by the parties and the relevant legal authority, the court grants in part and denies in part R & O's motion for partial summary judgment.

This order follows an order which granted R & O's motion for Partial Summary Judgment[2] regarding Whitmeyer's first, second, and third causes of action which alleged failure to accommodate, hostile work environment and constructive discharge under the Americans with Disabilities Act.

---

[1] Motion for Partial Summary Judgment, docket no. 18, filed Mar. 12, 2012.

[2] Memorandum Decision and Order, docket no. 51, filed Oct. 23, 2013.

## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-movant.[4] A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law.[5] The party opposing summary judgment bears the burden of presenting evidence that a disputed issue of material fact exists.[6] "A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact."[7] The opposing party must present evidence sufficient to support every essential element of the claims on which it bears the burden of proof.[8]

## Undisputed Material Facts

1. Whitmeyer was hired by defendant R & O on or about July 9, 1990.[9]

2. During the times relevant to her complaint, Whitmeyer held the title of "Estimator" at R & O. Whitmeyer was employed in this position until she resigned from R & O on or about March 3, 2010.[10]

---

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id*.

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[7] *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1175 (10th Cir. 1999).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[9] Memorandum in Support of Motion for Partial Summary Judgment (Memo in Support) at 2, docket no. 19, filed Mar. 12, 2012. Amended Complaint, docket no. 3, file Aug. 17, 2011.

[10] Memo in Support at 2-3; Whitmeyer Dep. 7:14-15, Jan. 30, 2012, attached as Ex. B to Memo in Support, docket no. 19-2. While Whitmeyer alleges that she was constructively discharged, she concedes that she "'resigned' in a technical sense." Memorandum Opposing Partial Summary Judgment (Opposition) at 7, docket no. 22, filed April 9, 2012.

3. Dale Campbell is, or at the time in question was, an Officer (President) and Director of R & O Construction.[11]

4. Mike Holland is, or at the time in question was, a Vice President at R & O Construction.[12]

5. Whitmeyer alleges she "endured sexual harassment and advances of managers for several years."[13]

6. Among those managers Whitmeyer claims harassed her was Frank McDonough. Approximately twenty years ago, at or near the time Whitmeyer began employment with R & O, McDonough made the observation that "[m]en don't argue over money when women are present." Whitmeyer interpreted this comment to mean McDonough was manipulating clients using her sexuality.[14]

7. Whitmeyer also claims she was sexually harassed by Tim Gladwell. In 2003 or 2004, Gladwell wrote "for a good time call" on one of Whitmeyer's business cards, which she in turn gave to a client, but only after scribbling out Gladwell's writing. During this same time period Gladwell asked Whitmeyer about her sex life and about her hysterectomy.[15]

8. Whitmeyer claims she was sexually harassed by Brady Hill. On October 15, 2004, Hill sent Whitmeyer an email containing a picture of lions engaging in sex. Hill was not

---

[11] Opposition at 2 (citing Whitmeyer Aff. ¶ 6, attached as Ex. A to Opposition, docket no. 22-1; and Utah Business Search of Registered Principals, attached as Ex. F to Opposition, docket no. 22-6).

[12] Opposition at 3 (citing Whitmeyer Aff. ¶ 7).

[13] Memo in Support at 4; Whitmeyer Dep. 90:17-25 to 91:1-6.

[14] Memo in Support at 4-5; Whitmeyer Dep. 100:20-25, 101:1-3, 15-20.

[15] Memo in Support at 5; Whitmeyer Dep. 93:6-25, 94:17-25, 95:1-12.

Whitmeyer's supervisor; Whitmeyer was training Hill to become an Estimator at the time of the email. Whitmeyer never reported the email to management.[16]

9. October 3, 2005, Hill sent Whitmeyer an email telling her she owed him a lap dance. Whitmeyer never reported this email to management.[17]

10. Whitmeyer claims she was harassed by Rick Zampedri. At or near the time Zampedri first came to be employed at R & O in 1992, Whitmeyer claims he sexually harassed her by showing her a picture of a baby with a "huge penis."[18]

11. Whitmeyer claims she was sexually harassed and assaulted by Dale Campbell on multiple occasions. The first instance occurred in December 2006, when Whitmeyer was invited to attend a business meeting and NFL game in San Diego.[19]

12. At some point during that business trip, Campbell came to Whitmeyer's hotel room, telling her that he wanted to talk. Once inside the room, however, Campbell began to try to kiss and hug Whitmeyer. Though Whitmeyer alleges she told Campbell "no," she nonetheless offered him a back rub. Campbell went into the bathroom to remove his clothing and came out wearing a towel, after which Whitmeyer proceeded to rub his back, arms and legs.[20]

13. Following the massage Campbell left Whitmeyer's hotel room.[21]

---

[16] Memo in Support at 5; Whitmeyer Dep. 98:3-25.

[17] Memo in Support at 5; Whitmeyer Dep. 97:23-25, 98:1.

[18] Memo in Support at 5; Whitmeyer Dep. 102:5-25, 103:1-3; Zampedri Aff., attached as Ex. C to Memo in Support, docket no. 19-3.

[19] Memo in Support at 5-6; Whitmeyer Dep. 103:12-24.

[20] Memo in Support at 6; Whitmeyer Dep. 108:1-6.

[21] Memo in Support at 6; Whitmeyer Dep. 108:6-7.

14. Whitmeyer never told anyone about the incident. Her husband discovered the encounter in April 2010, when he found a note or memorandum Whitmeyer had written to herself describing the incident.[22]

15. Whitmeyer alleges a similar incident occurred in early 2007 when she, Campbell and others traveled to San Diego for another business trip and NFL game.[23]

16. Campbell came to Whitmeyer's hotel room and after she allowed him in the room, Campbell began "pawing" at Whitmeyer and trying to kiss her. Once again, Whitmeyer offered Campbell a massage, which he accepted. After the massage Campbell left her room.[24]

17. When Whitmeyer was asked at her deposition if Campbell was ever successful in kissing her on either of the two San Diego encounters, she stated "feebly, yes." She also said that Campbell had pulled her close to him and tried to grope her breasts.[25]

18. As with the first incident, Whitmeyer never reported the second incident and it was not discovered until her husband discovered her writing.[26]

19. A third incident involving Campbell occurred on or about October 14, 2007, once again at a business meeting and NFL football game in San Diego.[27]

20. Whitmeyer describes the third encounter very similarly to the first two: Campbell came to her room, attempted to kiss and hug her, and she said no. Whitmeyer again offered

---

[22] Memo in Support at 6; Whitmeyer Dep. 111:9-10, 23-25; 112:1-10. Whitmeyer attempts to dispute this statement of not reporting by stating that she did report the harassment of Mike Hansen. *See* Opposition at 9. However, this dispute is not material because the stated incident of non-reporting does not relate to Hansen. Whitmeyer does not dispute that she did not report this incident relating to Campbell.

[23] Memo in Support at 6; Whitmeyer Dep. 113:7-25.

[24] Memo in Support at 6; Whitmeyer Dep. 115:6-15.

[25] Memo in Support at 7; Whitmeyer Dep. 117:15-25.

[26] Memo in Support at 7; Whitmeyer Dep. 117:7-14. Whitmeyer attempts to dispute this statement of not reporting by stating that she did report the harassment of Mike Hansen. See Opposition at 9. However, this dispute is not material because the stated incident of non-reporting does not relate to Hansen. Whitmeyer does not dispute that she did not report this incident relating to Campbell.

[27] Memo in Support at 7; Whitmeyer Dep. 118:9-14.

Campbell a massage, after which he disrobed, put a towel on, and received a massage by Whitmeyer. Campbell then left the hotel room without further incident.[28]

21.     Campbell continuously harassed Whitmeyer by openly declaring to Whitmeyer, "I can sexually harass you." He would make this statement openly in halls of R & O Construction until March of 2010.[29]

22.     Finally, Whitmeyer alleges she was sexually harassed and physically assaulted by Mike Holland. Holland allegedly walked up behind Whitmeyer while she was at her desk and grabbed her breasts numerous times between 2007 and March 2010.[30]

23.     As with the other instances of alleged sexual harassment, none of the allegations involving Mike Holland were ever reported to R & O prior to Whitmeyer's Utah Anti-Discrimination & Labor Commission (UALD) Charge of Discrimination.[31]

24.     UALD received a Charge of Discrimination from Whitmeyer on October 18, 2010.[32]

25.     Pursuant to a work sharing agreement between the UALD and the Equal Employment Opportunity Commission (EEOC), Whitmeyer's Charge of Discrimination was waived to the EEOC for processing.[33]

---

[28] Memo in Support at 7; Whitmeyer Dep. 126:19-25, 127:1-3.

[29] Opposition at 5; Amended Complaint ¶ 29, Whitmeyer Aff. ¶ 28.

[30] Memo in Support at 7; Amended Complaint ¶ 30; Whitmeyer Dep. 134:11-25, 135:1-23.

[31] Memo in Support at 8; Whitmeyer Dep. 136:3-18. Whitmeyer attempts to dispute this statement of not reporting by stating that she did report the harassment of Mike Hansen. See Opposition at 9. However, this dispute is not material because the stated incident of non-reporting does not relate to Hansen. Whitmeyer does not dispute that she did not report incidents relating to Holland.

[32] Memo in Support at 8; Charge of Discrimination, attached as Ex. D to Memo in Support, docket no. 19-4.

[33] Memo in Support at 8; Letter from Heather E. Gunnarson, Director, UALD to Orluff Opheikens, R & O Construction (Oct. 27, 2010), attached as Ex. E to Memo in Support, docket no. 19-5.

26. In her Charge of Discrimination, Whitmeyer alleged discrimination based on (1) sex, (2) retaliation, and (3) disability.[34]

27. Whitmeyer charged that her First Date of Harm occurred in November 2007.[35]

28. Whitmeyer claimed that the latest date of discrimination took place was on March 3, 2010.[36]

29. Whitmeyer admits she never told anyone at R & O about her alleged sexual harassment.[37]

## Title VII Claims against Campbell and Holland

Defendants claim that Whitmeyer's fourth cause of action for hostile work environment and her fifth cause of action for sexual harassment must be dismissed as to the individual defendants Campbell and Holland. The law is well established in the Tenth Circuit that "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."[38]

Whitmeyer argues that Campbell and Holland, as president and vice-president of R & O, "were not mere supervisors to Ms. Whitmeyer, they were the end of the line and they were in fact her employer, just as much as R & O Construction itself was her employer."[39] But the facts are clear that R & O was Whitmeyer's sole employer in this case. Therefore, the proper method for Whitmeyer to proceed "under Title VII is by suing the employer, either by naming the

---

[34] *Id.* Summary Judgment was previously granted against Whitmeyer on her first, second, and third claims of failure to accommodate, hostile work environment and constructive discharge under the ADA. *See* Memorandum Decision and Order Granting Defendant's Motion for Partial Summary Judgment, docket no. 51, filed October 23, 2013.

[35] *Id.*

[36] *Id.*

[37] Memo in Support at 8; Intake Questionnaire - Employment Discrimination at 2, attached as Ex. F to Memo in Support, docket no. 19-6.

[38] *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) (citation omitted).

[39] Opposition at 12.

7

supervisory employees as agents of the employer *or* by naming the employer directly."[40]
Because the established rule "that personal capacity suits against individual supervisors are inappropriate under Title VII,"[41] the fourth and fifth causes of action will be dismissed against the individual defendants Campbell and Holland.

## Time Barred Title VII Claims

Defendants argue that Whitmeyer's claims of discrete acts of sexual harassment that occurred before December 22, 2009 are time barred under the 300 day statute of limitations for filing a claim with the EEOC or a state agency with authority to grant relief. Whitmeyer filed a complaint with UALD on October 18, 2010, which was simultaneously filed with the EEOC.[42] Under the 300 day statute of limitations, discrete acts occurring prior to December 22, 2009 (300 days prior to filing date of October 18, 2010) are time-barred. Whitmeyer contends, however, that these were not simply discrete acts, but part of a continuous hostile work environment.

"Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct."[43] The relevant statute, 42 U.S.C. § 2000e specifically states:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier[.][44]

---

[40] *Sauers*, 1 F.3d at 1125 (citation omitted) (emphasis added) .

[41] *Haynes v. Williams*, 88 F.3d 989, 901 (10th Cir. 1996) (citing *Sauers,* 1F.3d at 1125).

[42] Charge of Discrimination, attached as Ex. D to Memo in Support, docket no. 19-4; Letter from Heather E. Gunnarson, Director, UALD to Orluff Opheikens, R & O Construction (Oct. 27, 2010), attached as Ex. E to Memo in Support, docket no. 19-5.

[43] *Duncan v. Manager, Dept. of Safety, City and Cnty. of Denver,* 397 F.3d 1300, 1308 (10th Cir. 2005).

[44] 42 U.S.C. § 2000E-5(e)(1).

Consequently, this statute bars Title VII claims for discrete discriminatory acts "when those incidents occurred more than 300 days prior to the filing of Plaintiff's EEO complaint."[45]

But Whitmeyer asserts that these acts support her claim of a hostile work environment. "Hostile environment claims are different in kind from discrete acts[,]"[46] requiring a separate analysis. For a charge of hostile work environment "to be timely, the employee need only file a charge within 180 or 300 days of *any* act that is part of the hostile work environment."[47] If an act contributing to the claim of a hostile work environment occurs within the filing period, then all the acts relating to the hostile work environment may be considered by the court, even if they would be time barred as discrete acts of discrimination.[48]

Therefore, the "court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."[49] For the court to determine whether a hostile work environment claim exists, it must look at "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[50] Acts occurring outside of the 300 day statute of limitations may be considered as part of the hostile environment claim when the incidents involve the same type of employment

---

[45] *Martinez v. Potter,* 347 F.3d 1208, 12010 (10th Cir. 2003); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-13 (2002).

[46] *Morgan,* 536 U.S. at 115 (citing 1B Lindemann & P. Grossman, *Employment Discrimination Law* 348-49 (3d ed. 1996).

[47] *Id*. at 118 (emphasis added).

[48] *Id.* at 117.

[49] *Id.* at 120.

[50] *Id.* at 116 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

actions, occurred relatively frequently, and were perpetrated by the same managers as the incidents occurring within the 300 day filing period.[51]

Turning to the facts of this case, it clear that the allegations involving Holland fall within the statutory period. Whitmeyer has alleged the last act of harassment by Holland occurred in March 2010, well after December 22, 2009, the 300 day limitations date. Whitmeyer alleges that between 2007 and March 2010, she was sexually harassed and physically assaulted by Holland when he walked up behind her while she was at her desk and grabbed her breasts numerous times.[52] Because the incidents by Holland all involve the same type of alleged harassment and were perpetrated by the same person, all the claims relating to actions by Holland will be considered as part of the same hostile work environment and remain viable claims in this action.

However, the claims involving Frank McDonough in 1990 ("Men don't argue over money when women are present"),[53] Rick Zampedri in 1992 (showing another employee a picture of a baby with a huge penis),[54] Tim Gladwell in 2003 or 2004 (writing "for a good time call" on plaintiff's business card),[55] Brady Hill in 2004 and 2005 (emailing a picture of two lions engaged in sex and sending Whitmeyer an email saying she owed him a lap dance),[56] are each too attenuated from Holland's acts to show a sufficient relationship for purposes of hostile work environment. These remote, discrete acts are well outside of the 300 day filing period; they do not involve the same type of harassment; they occurred sporadically and infrequently; they were

---

[51] *Id.*; *Duncan,* 397 F.3d at 1309.

[52] Undisputed Fact 21, *supra* at 5; Memo in Support at 7; Amended Complaint ¶ 30; Whitmeyer Dep. 134:11-25, 135:1-23.

[53] Undisputed Fact 6, *supra* at 3; Memo in Support at 4-5; Whitmeyer Dep. 100:20-25, 101:1-3, 15-20.

[54] Undisputed Fact 10, *supra* at 3; Memo in Support at 5; Whitmeyer Dep. 102:5-25, 103:1-3; Zampedri Aff., attached as Ex. C to Memo in Support, docket no. 19-3.

[55] Undisputed Fact 7, *supra* at 3; Memo in Support at 5; Whitmeyer Dep. 93:6-25, 94:17-25, 95:1-12.

[56] Undisputed Facts 8-9, *supra* at 3; Memo in Support at 5; Whitmeyer Dep. 97:23-25, 98:1-25.

not perpetrated by the same person; and Whitmeyer admits that she did not tell anyone at R & O about the incidents. "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur."[57] Any claims relating to these acts are insufficient to support a claim of hostile work environment.

Finally, the claims relating to Campbell's visits to Whitmeyer's San Diego hotel room during business related trips on three separate occasions between 2006 and October 2007[58] are similar and perpetrated by the same person. But they are clearly outside of the 300 day filing period, with the last occurrence well before December 2009.

Whitmeyer attempts to associate these acts with Campbell's actions that did occur within the 300 day period. She claims that Campbell continued to harass her through March 2010 by stating. "I can sexually harass you."[59] Whitmeyer claims that Campbell made these statements to her openly in the halls of R & O Construction.[60]

These acts of continuing harassment by Campbell fall well within the 300 day filing period. Because Campbell continued his harassing behavior into March 2010, the other alleged acts of harassment by Campbell outside of the period, dating back to the first hotel encounter in 2006, are related to his ongoing harassment and will "be considered to complete the history of acts comprising the hostile environment."[61]

---

[57] *Duncan,* 397 F.3d at 1308.

[58] Undisputed Facts 11-13, 15-17, 19-20, *supra* at 4-5; Memo in Support at 5-7; Whitmeyer Dep. 103:12-24, 108:1-7, 113:7-25, 115:6-15, 117:15-25, 118:9-14, 126:19-25, 127:1-3.

[59] Opposition at 5; Amended Complaint ¶ 29; Whitmeyer Aff. ¶ 28.

[60] Whitmeyer Aff. ¶ 28.

[61] *Holmes v Utah Dept. of Workforce Servs.,* 483 F.3d 1057, 1063 (10th Cir. 2007).

Defendants also raise a lack of notice argument for the first time in their reply memorandum.[62] The court declines to consider this argument raised for the first time in the reply memorandum because Whitmeyer did not have a full opportunity to respond to it.[63]

## State Law Tort Claims

Defendant R & O argues that Whitmeyer's "state law claims of intentional infliction of emotional distress and assault and battery are barred by the exclusive remedy provision of the Workers' Compensation Act and because [Whitmeyer] has not demonstrated R & O intended or directed Campbell or Holland to injure her."[64] R & O relies on *Mounteer v. Utah Power & Light Co.*,[65] where the Utah Supreme Court held that the Workers' Compensation Act provides the exclusive remedy for intentional infliction of emotional distress claims for the actions of an employee. "Recovery for the intentional infliction of emotional distress is possible, however, despite the Workers' Compensation Act if a plaintiff can prove that the employer 'intended or directed the injurious act.'"[66]

Here, Whitmeyer fails to provide sufficient evidence that R & O intended or directed any individual defendants to inflict emotional distress or injury upon her. Whitmeyer does not identify R & O Construction as the acting party in either her complaint or facts submitted in response to this motion. The complaint identifies the individual defendants as the actors causing

---

[62] Reply Memorandum in Support of Motion for Partial Summary Judgment (Reply) at 4-5, docket no. 23, filed Apr. 20, 2012.

[63] *See Hornaday Mfg. v. Double Tap Ammunition, Inc.,* No. 2:11-CV-18 TS, 2013 WL 1622099, at *1 (D.Utah Apr. 15, 2013); *In re Aramark Sports and Entm't Servs., Inc.*, No. 2:09-CV-637-TC, 2012 WL 3776859, at *3 n.5 (D.Utah Aug. 29, 2013).

[64] Memo in Support at 13.

[65] 823 P.2d 1055, 1058 (Utah 1991) ("Unless plaintiff can prove that [the employer] intended or directed [the harasser's actions], his damages arising from any emotional distress can be compensated only under the workers' compensation scheme.").

[66] *James v. Frank's Westates Servs., Inc.,* 747 F. Supp. 2d 1264, 1276-77 (quoting *Helf v. Chevron U.S.A., Inc.,* 2009 UT 11, ¶ 22, 203 P.3d 962 (Utah 2009)).

injury. The alleged conduct of Campbell and Holland was clearly intentional,[67] and their actions could not "be reasonably believed to further or advance the business interests of [R & O]."[68] Consequently, any remedy against R & O for the state tort claims "are limited to those provided for in the Workers' Compensation Act."[69]

**ORDER**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment[70] is GRANTED IN PART and DENIED IN PART as follows:

    1.    GRANTING summary judgment on the Title VII claims in Causes of Action 4-5 against Campbell and Holland;

    2.    GRANTING IN PART summary judgment on the Title VII claims based on acts occurring prior to December 22, 2009, EXCEPT for the claims against R & O based on allegations involving Mike Holland and Dale Campbell, which remain;

    3.    GRANTING summary judgment on state law claims of intentional infliction of emotional distress and assault and battery against R & O in Causes of Action 6-7.

Having previously granted the motion for Partial Summary Judgment[71] and after granting in part and denying in part this Motion for Partial Summary Judgment, the following claims remain:

    1.    Title VII claims against R & O, but based only on allegation involving Mike Holland and Dale Campbell; and

---

[67] *See id.* at 1277.

[68] *Id.*

[69] *Id.*

[70] [Docket no. 18](#).

[71] Memorandum Decision and Order, [docket no. 51](#), filed Oct. 23, 2013.

2. State law tort claims against Mike Holland and Dale Campbell.

A trial order will issue regarding the trial on these claims set January 27, 2014.

Signed December 28, 2013.

BY THE COURT

_____
District Judge David Nuffer